IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| EDITH F. CANTRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:07-CV-194 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 16] will be granted, and plaintiff's motion for summary judgment [doc. 12] will be denied.

I.

*Procedural History*

Plaintiff was born in 1945. She applied for benefits in September 2003, claiming to be disabled by residuals of cervical spinal cancer, including headaches and restricted motion of the head and neck. [Tr. 114, 138, 152].[1]

---

[1] Plaintiff's insured status expired March 31, 2003 [Tr. 117, 601], and she must prove the onset of disability on or before that date. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Plaintiff alleged a disability onset date of March 5, 1997. [Tr. 114].[2] The application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in May 2006.

By decision dated September 6, 2006, the ALJ denied benefits. He concluded that plaintiff suffers from "history of treated papillary carcinoma; heart condition; psoriasis; scleritis; high cholesterol; degenerative disc disease with neck pain and headaches; history of mood disorder; and arthritis in her hands," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 78]. The ALJ further concluded that, on her date last insured, plaintiff retained the residual functional capacity ("RFC") to return to her past relevant work as a counselor. [Tr. 79-81]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review by the Commissioner's Appeals Council, despite the submission and consideration of additional medical records. [Tr. 3-12]. The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).[3]

---

[2] The alleged onset date was subsequently amended to November 26, 2001. [Tr. 76, 602].

[3] Plaintiff's additional medical records are discussed in her brief and are included in the administrative record. [Tr. 13-68, 571-97]. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation (continued...)

II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

---

³(...continued)
omitted). This court can, however, remand a case for further administrative proceedings, but only if the claimant shows that her evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id*. Despite numerous prior admonitions from this court in other cases, the present plaintiff's law firm has again made no effort to articulate how its late-submitted evidence warrants sentence six remand, nor is sentence six even addressed in plaintiff's briefing. The issue is accordingly waived, and plaintiff's additional medical evidence has *not* been considered. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *see also* Fed. R. Civ. P. 11(b)(2), (c). Counsel is again cautioned that, effective April 10, 2008, all motions and briefs submitted to the undersigned referencing Appeals Council evidence absent a developed application of the sentence six standard will be promptly stricken from the docket. *See Hilton v. Astrue*, No. 2:07-CV-117, 2008 WL 1733149, at *3-4 (E.D. Tenn. Apr. 10, 2008).

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

### III.

*Background*

Plaintiff's past relevant employment is as a counselor. [Tr. 139]. She alleges constant, severe, and intractable pain of the head and neck. [Tr. 121, 125-26]. At the 2006 administrative hearing, plaintiff testified that her purported disability, as of the March 31, 2003 date last insured, was due to pain "mostly in my neck and my head." [Tr. 614]. On and after October 23, 2003, plaintiff informed the Commissioner that "everything [had] changed" since the September 2003 filing of her claim, that she was "getting worse," and that she could no longer "do what I used to do." [Tr. 128, 130, 132].

The Department of Veterans Affairs has declared plaintiff 100% permanently and totally disabled effective December 1, 1994, due to service-connected malignancy. [Tr. 535, 562]. The Commissioner must nonetheless separately decide the question of disability under Social Security law, and "a determination made by another agency . . . is not binding[.]" 20 C.F.R. § 404.1504.

5

IV.

*Relevant Medical Evidence*

A. <u>Physical</u>

The treatment evidence of record comes from various Veterans Administration Medical Centers ("VA"). October 2002 imaging of the cervical spine showed multiple shrapnel fragments, straightening suggestive of muscular spasms, and marked narrowing at C5-6 and C6-7 with spurring. [Tr. 299-300]. Head imaging was unremarkable except for possible sinus abnormality. [Tr. 298-99].

As noted by the ALJ [Tr. 79], VA sources have noted the presence of arthritis in plaintiff's hands "without further elaboration." [Tr. 171, 180, 203, 209, 218, 238]. Plaintiff has also exhibited a positive Tinel's sign in the right wrist. [Tr. 177]. Bilateral Phalen's testing, along with Tinel's testing of the left wrist, has been negative. [Tr. 177].[4]

July 2003 cervical spine imaging showed "[m]oderate degenerative changes." [Tr. 296-97]. At a July 18, 2003 appointment, plaintiff complained of "[n]eck pain for the

---

[4]

> Physicians can use specific tests to try to produce the symptoms of carpal tunnel syndrome. In the Tinel test, the doctor taps on or presses on the median nerve in the patient's wrist. The test is positive when tingling in the fingers or a resultant shock-like sensation occurs. The Phalen, or wrist-flexion, test involves having the patient hold his or her forearms upright by pointing the fingers down and pressing the backs of the hands together. The presence of carpal tunnel syndrome is suggested if one or more symptoms, such as tingling or increasing numbness, is felt in the fingers within 1 minute.

*See* http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm (last visited June 5, 2008).

last year or so. It has been getting much worse over the past six months." [Tr. 176]. Attending physician Ronald Warncke reviewed plaintiff's cervical imaging and opined that her neck pain and headaches were the result of "severe degenerative disc disease at C5-6 and C6-7." [Tr. 175-77].

Nonexamining physician J. Andriole completed a Physical RFC Assessment in August 2003. Dr. Andriole opined that plaintiff could work at the medium level of exertion with no postural or manipulative restrictions. [Tr. 365-72]. Dr. Andriole further opined that plaintiff could stand and/or walk approximately six hours per workday, and that she could also sit for approximately six hours per workday. [Tr. 366]. Nonexamining physician I.B. Price completed a second Physical RFC Assessment in December 2003, reaching the same pertinent conclusions as Dr. Andriole. [Tr. 374-80].

In April 2006, VA physician David Walters completed a medical assessment.[5] In material part, Dr. Walters opined that, from between 1991 and 1996 to the present date, plaintiff has been unable to: lift anything; stand "for more than a few minutes"; sit for more than fifteen minutes; or perform any postural activities such as kneeling or crouching. [Tr. 563-64, 567]. Dr. Walters based his assessment on "chronic progressive cervical disk disease with neuropathy supported by MRI, CT and physical exam." [Tr. 565].

---

[5] According to plaintiff's administrative hearing testimony, Dr. Walters is a surgical oncologist who performed her cancer surgery in 1979 and a gall bladder operation in April 2006. [Tr. 608]. The VA records indicate that during January 2001 Dr. Thomas Thomas "placed several calls to" Dr. Walters who "state[d] she has not had a [sic] Iodine scan for several years." [Tr. 279]. Plaintiff cites no additional treatment by Dr. Walters.

B. <u>Mental</u>

In December 2000, plaintiff presented to a VA crisis team requesting a refill of the antidepressant Wellbutrin, which she stated she had been out of for three months. [Tr. 281]. An initial assessment of adjustment disorder with depressed mood was noted, and the attending social worker recorded plaintiff's self-report that "she is doing well on meds." [Tr. 281].

March 2001, June 2001, and August 2003 VA depression screening was "negative." [Tr. 175, 254, 278]. VA records from October 2002 and September 2003 expressly note "no depression." [Tr. 200, 342].

VA notes from July 5, 2005, state that plaintiff "is currently undergoing treatment for depression." [Tr. 530]. Plaintiff "date[d] the onset of this depression back to approx. one year ago [May 2004] with worsening headaches." [Tr. 549].

An April 2006 mental assessment form predicts that plaintiff is seriously limited in three vocational capacities and unable to function in six others. [Tr. 568-70]. The origin of this assessment is unknown, as the source signature is illegible and no other identifying information is provided.

V.

*Vocational Expert Testimony*

Dr. Howard Feldman ("VE") testified as a vocational expert at the administrative hearing. Dr. Feldman testified that plaintiff's prior counselor job is performed

at the sedentary to light level of exertion. [Tr. 617-18].

VI.

*Analysis*

Several distinct theories can be gleaned from plaintiff's briefing in support of reversal or remand. The Court will address these issues in turn.

A. Depression

In his decision, the ALJ found that plaintiff suffers from a number of "severe" impairments including "*history of* mood disorder" but did not include any mental limitations in his RFC findings. [Tr. 78-80] (emphasis added). Plaintiff now criticizes the ALJ for not incorporating any depression-related limitations. She also complains that the ALJ should have sought additional opinion evidence regarding her mental health.

It is first noted that the ALJ found a "history of" mood disorder, as opposed to any problem existing during the relevant period between the alleged onset date (November 26, 2001) and the date last insured (March 31, 2003). That conclusion is well-supported by plaintiff's VA records.

In December 2000, plaintiff reported that she "did well" on Wellbutrin. [Tr. 281]. Three depression screenings were "negative." [Tr. 175, 254, 278]. Records from October 2002 and September 2003 expressly note "no depression." [Tr. 200, 342]. In May 2005, plaintiff dated the onset of her depression to May 2004, well after the date last insured. In light of these facts, plaintiff's arguments pertaining to her mental RFC must fail.

9

B. Arthritis

Plaintiff next contends that the ALJ erred by not imposing additional RFC restrictions secondary to the severe impairment of "arthritis in her hands." However, plaintiff does not specify what objectively-supported additional restrictions should have been imposed. As the ALJ correctly noted, the VA records sometimes note the presence of arthritis "without further elaboration." [Tr. 79]. Similarly, no specific restrictions are imposed or argued relating to the positive Tinel's sign in plaintiff's right wrist. The ALJ accordingly adopted the opinions of the two nonexamining consultants, both of whom predicted no manipulative limitation. [Tr. 80, 368, 376]. The court finds no error, particularly in light of the fact that plaintiff admittedly remained able, as late as May 2006, to make quilts by hand. [Tr. 609].

C. Full-Time Work

Plaintiff next argues that the ALJ found her incapable of full-time work. Plaintiff cites the ALJ's conclusion that she can "sit, stand and/or walk for 6 of 8 hours[.]" [Tr. 79].

Assuming that the ALJ's unfortunately imprecise language rises to the level of error (and assuming that the issue of full-time work has any relevance in the context of this step four case) the court deems the error harmless. To place the above-cited quotation in context, the ALJ's opinion explains that

> significant weight was given to the contemporaneous opinions of the state disability evaluators, who, in October and December 2003, found claimant capable of . . . *sitting, standing and walking for 6 of 8 hours.* . . .
>
> . . .
>
> . . . [I]t is determined that, as of her date last insured, claimant's residual functional capacity was as set forth above.

[Tr. 80] (emphasis added). Clearly, the ALJ employed the same imprecise "6 of 8 hours" language in summarizing the sitting, standing, and walking assessments of the two nonexamining state agency physicians, Drs. Andriole and Price. Each of those doctors in fact opined that plaintiff was capable of sitting for six hours per day *and* standing/walking for six hours per day, for a total of twelve hours. [Tr. 366, 374]. In adopting those opinions, the ALJ did not find plaintiff incapable of completing an eight-hour workday. Any error stemming from the ALJ's inaccurate language is deemed harmless. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464-66 (6th Cir. 2005) (error harmless where ALJ's reasoning can be inferred from his overall discussion of the condition).

## D. Past Relevant Work

Plaintiff next complains that at the administrative hearing she "attempted to testified [sic] as to lifting requirements of" her past relevant counseling position, but that "the ALJ cut her off mid-sentence (Tr. 605). It is unclear how the ALJ reached the conclusion Plaintiff could perform this job '[a]s it was actually performed and generally performed,' (Tr. 81) as the evidence of record contains no analysis of how Plaintiff performed it or how it is generally performed." [Doc. 13, p. 17]. Plaintiff is simply incorrect.

11

The VE testified that the job of counselor is generally performed at the sedentary to light level of exertion. [Tr. 617-18]. In plaintiff's Disability Report [ex. 5E], she told the Commissioner that she never lifted a weight of ten pounds while working as a counselor. [Tr. 140]. The ALJ cited both of these statements in his opinion. [Tr. 81].

The ALJ's RFC findings ("to lift light items frequently and 10 pounds occasionally") were consistent with plaintiff's own description of her prior job. The lifting parameters of the ALJ's findings did not preclude plaintiff's performance of her past relevant work as of March 31, 2003. The court finds no reversible error.

### E. Treating Physician

The ALJ considered, but gave "no weight" to, treating surgeon Walters's assessment because it was "completed more than three years after the time period that is the subject of this claim." [Tr. 80]. Plaintiff insists that the ALJ erred, as Dr. Walters expressly related his restrictions ten to fifteen years into the past.

The Commissioner is not required to accept a treating physician's opinion if it is not supported by sufficient medical data and if a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). In the present case, substantial evidence supports the rejection of Dr. Walters's assessment as inconsistent with the remaining documentary evidence for "the time period that is the subject of this claim."

As noted above, Dr. Walters's opinion was generated three years after plaintiff's date last insured. He opined, in material part, that since some point between 1991 and 1996 plaintiff had been unable to lift any lift anything, stand "for more than a few minutes," sit for more than fifteen minutes, or perform any postural activities such as kneeling or crouching. [Tr. 563-64, 567].

Dr. Walters's remarkably extreme assessment exceeds the objective treatment notes nearest the date of plaintiff's date last insured, as cited by the ALJ. [Tr. 80]. Further, as illustrated in footnote 5 above, the objective record indicates (and plaintiff cites) virtually no treatment by Dr. Walters between 1979 and 2006, critically diminishing the value of his opinion.

Dr. Walters's extraordinarily extreme limitations are inconsistent with plaintiff's own description of her counseling work from 1992 through 1997. [Tr. 139]. The court also notes that in May 2005 plaintiff related the onset of her depression to the worsening of her headaches in May 2004. [Tr. 549]. She elsewhere reported significant worsening in either the autumn [Tr. 128, 130, 132] or the first half of [Tr. 176] the year 2003. Most strikingly, Dr. Walters's assessment (particularly, no ability to kneel or crouch since at least 1996) is wholly inconsistent with plaintiff's pursuit of a green belt in karate during the years 2002 and 2003.

January 30, 2002 VA records indicate that plaintiff was at that time exercising (karate) five times per week. [Tr. 216]. That information is repeated, and presumed by this

13

court to be correct, in the VA records of February 12, 2002. [Tr. 216]. In October 2002, plaintiff was purportedly "tired all the time" but was still doing karate "about" five times per week *and working toward earning her green belt*. [Tr. 198, 201, 204, 207]. VA records from March 14 and August 21, 200<u>3</u>, continued to note that plaintiff was "earning [her] green belt in karate." [Tr. 173, 182].

In September 2003, plaintiff told the Commissioner that she "*[u]se[d] to do karate* but had to be in bed for 3 day[s] after 1 hr. of exercise." [Tr. 123] (emphasis added). Through her administrative hearing testimony, plaintiff endeavored to further minimize her recent martial arts activity:

> A: . . . I got my daughter to go to karate because she was with a man that used to beat her up. And it was stupid, so I went with her so I could do the exercise. I didn't pay to go to karate or nothing.
>
> Q: So what did you do at karate?
>
> A: Well, I tried to do some stretching, so that way I wouldn't be so stiff. I wanted to keep moving.
>
> Q: Okay. Did it help?
>
> A: No, not really, but it made me feel better inside, in my brain.
>
> Q: What about the effect on your body? Were you bending yourself, were you –
>
> A: Oh, no, no, I didn't do any of that stuff. I just stretched my legs, you know, bending over, you know what I'm talking about.

[Tr. 611-12].

14

The ALJ did not err in citing plaintiff's physical activity and concluding that "[h]er testimony [was] not consistent with the medical record as of March 2003." [Tr. 79-80]. The objective evidence (that plaintiff was attending karate classes five days per week in pursuit of her green belt) and the subjective testimony (that plaintiff did nothing more at karate classes than "just stretch her legs") are irreconcilable. This glaring inconsistency is eminently relevant to plaintiff's capabilities as of her date last insured, and it was well within the ALJ's discretion to rely upon the strain of evidence that he found most credible.

The instant case is complicated by evidence of a worsening condition *around the time of* plaintiff's date last insured. A different factfinder could perhaps have reached a different conclusion below, but that is not the standard of review binding this court. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

The Commissioner's final decision is supported by substantial evidence and thus must be affirmed. An order consistent with this opinion will be entered.

ENTER:

       s/ Leon Jordan
   United States District Judge